Signed and Filed: February 28, 2011

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re ) Bankruptcy Case
) No. 10-33938DM
THE LAWRENCE BUILDING COMPANY, )
a California Corporation, ) Chapter 11
)
            Debtor. )
_____)
THE LAWRENCE BUILDING COMPANY, ) Adversary Proceeding
) No. 10-03189DM
            Plaintiff, ) Adversary Proceeding
) No. 10-03279DM
v. )
)
JON C. THUSH, SANDRA THUSH, et al.,)
)
            Defendants. )
_____)

MEMORANDUM DECISION REGARDING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.  <u>INTRODUCTION</u>

Defendants' Motion For Summary Judgment ("Motion") came on before the court on February 4, 2011. Defendants Jon C. Thush ("Thush") and Sandra Thush appeared and were represented by David B. Draper, Esq. and Mark W. Good, Esq., two of their attorneys; Debtor and Plaintiff The Lawrence Building Company ("Debtor") appeared and was represented by Sheila Gropper Nelson, Esq., its attorney. For the reasons explained below, the court will grant the Motion, enter judgment for Defendants, and vacate the presently scheduled trial date of March 28-29, 2011.

-1-

## II. BACKGROUND

Defendants owned a commercial building in San Jose, California (the "Property") and on May 27, 2003, entered into a Commercial Property Purchase Agreement ("Agreement") with Debtor to sell it the Property. The Agreement apparently was drafted primarily by Thush and contains somewhat unconventional terms that are the core of the dispute between the parties here.

The Purchase Price for the Property, as described in the Agreement, is $1,645,000. Of that amount, Debtor paid a down payment of $20,000 in cash and executed two notes, one for $1,500,000 (the "First Loan") and one for $125,000 (the "Second Loan"). The term of the First Loan, as evidenced by The Lawrence Building Company Secured Promissory Note (the "Note"), having an Effective Date of June 1, 2003, is thirty-nine years, broken into what the parties described as the "Initial Term" and the "Second Term."[1]

The Note calls for interest to accrue at the rate of 4.5% during the Initial Term, with no interest to be paid. Negative amortization applies to the outstanding principal, and interest is compounded annually. The Initial Term runs from the Effective Date (June 1, 2003) until May 31, 2022. The Second Term runs from June 1, 2022 until May 31, 2042, and bears interest under an amortization formula, at a variable prime rate plus 2%, with certain maximum and minimum rates. Payment is to be made monthly until the May 21, 2042 maturity date.

Simply stated, the documents provide that no interest

---

[1] The Note also referred to the Initial Term as the "First Term."

-2-

reductions are to be made on the First Loan until the expiration of the Initial Term, namely, nineteen years after the Effective Date.

The Agreement was accompanied by a Seller Financing Addendum and Disclosure in which a balloon payment of $3,461,790 is set forth as becoming due on June 1, 2022, the expiration of the Initial Term.[2]

Paragraph 36F.1 of the Agreement further provides that during the first nineteen years of the Agreement, in other words, during the Initial Term of the Note, Debtor is to pay Defendants cash flow based on actual or historical rents at the Property (the "pass-through payments"). Debtor contends that the pass-through payments could not have been additional consideration flowing to Defendants, but rather should be credited against some portion of its obligations under the Agreement and the Note. Defendants dispute that characterization, contending that the Agreement sets forth the understandings of the parties, namely that Defendants, during the Initial Term, were obligated to pay property taxes and insurance on the Property, as consideration for Debtor's payment of the pass-through payments to them. Those mutual obligations cease when the Second Term of the Note commences.

In sum, Defendants were to receive a portion of the rents thrown off by the Property; in turn they were to pay the insurance and taxes. During that time the Note would accrue interest on a negative amortization basis, with no payments being made. All of

---

[2] The court assumes that negative amortization of a $1,500,000 debt, compounded annually at 4.5%, results in that amount.

that would be reversed at the end of nineteen years, namely Debtor would keep the rents and pay the insurance and taxes, but would be obligated to make monthly payments to Defendants under the Second Term of the Note.

Meanwhile, the Second Loan is to be amortized over five years, with the first installment being paid one year after the Effective Date of the Agreement.

In 2006 and thereafter, Debtor failed to make payments on the Second Loan and Thush in January, 2007, gave notice of default and began enforcing his rights without recourse to court or the appointment of receiver, as authorized by California Civil Code § 2938.

Late in 2007, Debtor sued Defendants in the Santa Clara Superior Court ("Superior Court") setting forth four causes of action and in January, 2008, Debtor filed a voluntary Chapter 11 petition in the San Jose Division of this court.

Debtor contends that Thush interfered with its rights at the Property, including exercising control by changing locks and by diverting rents from third party tenants to be paid to him rather than to Debtor. This court, through the San Jose Division, ordered the appointment of a receiver and ultimately abstained from further proceedings, permitting the Superior Court to continue to adjudicate the rights of the parties.

Debtor's first Chapter 11 was later dismissed and it filed Chapter 11, again in this division, on October 4, 2010.[3]

---

[3] After the San Jose Division's abstention there was a great deal of activity in the Superior Court that is well-known to the parties and need not be recited here.

-4-

Defendants sought relief from stay to continue the litigation in Superior Court; Debtor removed the state court action to this court; at the court's request, Debtor commenced this adversary proceeding to set forth more specifically the issues that needed to be resolved.

This court acquiesced in the parties' request that it provide a forum for a prompt adjudication of their respective rights, duties and obligations. Accordingly, rather than remand to the Superior Court or grant relief from stay, the court agreed and set the matter for trial.[4] Defendants sought to eliminate the need for trial by filing the Motion.

### III. ISSUES

In Debtor's complaint commencing this adversary proceeding, it plead four claims for relief: declaratory relief that the pass-through payments had to be applied to some portion of the obligations under the Note; interference with contract, based upon the theory that Defendants, and Thush in particular, interfered with Debtor's relationship with its tenants at the Property; interference with prospective economic advantage; and accounting and determination of set-off.

### IV. DISCUSSION

While Defendants in their Motion addressed the first claim for relief last, the court will reverse that sequence as the dispute over the terms of the Agreement and the Note are critical to a resolution of this case.

Basically, Defendants contend that unconventional is not the

---

[4] For reasons the court is responsible for that trial date had to be moved from late February to late March.

same as ambiguous or unenforceable, and that even though Debtor now contends the Agreement and Note cannot possibly mean what Defendants say they mean, still the Agreement and Note are enforceable and the pass-through payments should not and cannot reduce any principal or interest obligations thereunder. Debtor contends that there is an ambiguity that extrinsic evidence is needed to explain. But even if there were such evidence, Debtor has offered no plausible characterization of how the court would excise Paragraph 36F.1 and still have an agreement that reflects a meeting of the minds of the parties.

At oral argument, counsel for Debtor argued that one way to reconcile what she calls the ambiguity would be to apply the pass-through payments to the capitalized interest, <u>i.e.</u>, the interest accrued during the Initial Term of the Note. While that is a creative approach, there is no basis in the documentation or the law for the court to do so.

A subsidiary issue that the court does not resolve is whether the pass-through payments made since 2003 or even at present were secured obligations of Debtor based upon the Note's incorporation of the Agreement by reference and the fact that the Note is itself secured by the deed of trust that was executed by Debtor when the transaction closed. Because the principal task of the court is to interpret the Agreement to find out whether the pass-through payments should reduce any of the obligations under the Agreement or the Note, and because the court concludes that they do not, whether or not the rents that produced those payments were or are included within the security embraced by the deed of trust, does not need to be decided. The fact is that Defendants, through

-6-

counsel, have provided the court with a "pay-off" demand if the Property can be sold, and that demand is consistent with the accrual of obligations under the Agreement and the Note without regard to the pass-through payments. If and when the Debtor is able to sell or refinance the Property, the amount that would have to be paid to Defendants has been established in the record.[5]

In reaching the conclusion that the Agreement and Note should be construed the way Defendants contend, the court acknowledges that there is some inconsistent terminology in the documents but when taken as a whole, that is the only conclusion one can reach. Accordingly, there is no ambiguity and no need to take extrinsic evidence or to speculate on what the documents might have said. First, while the Purchase Price of the Property is set forth as $1,645,000, that does not mean there could be no other amounts owing under the Agreement. Indeed, the nineteen years of negative amortization, and thus accrual of interest resulting in a balloon of over twice that amount, in fact increases the total purchase price on a par (other than present value) basis.

Second, Paragraph 36F.1 comes under the heading "Other Terms and Conditions" and they are clear in and of themselves. Next, because the Note was subject to negative amortization during the same period of time that the pass-through payments were to be made, the parties could not have contemplated that they would reduce either the principal or the interest due on the Note.

From all of the foregoing, the court concludes that there are

---

[5] The court also does not need to decide whether any third party buyer of the Property would take subject to the pass-through payment obligations of paragraph 36F.1.

no material facts in dispute and further concludes that defendants are entitled to summary judgment on the first claim for relief. They are entitled to a declaration that none of the pass-through payments should be applied to either principal or interest on the Initial Loan or the Second Loan, but represented additional consideration, apart from the simple purchase and sale of the Property. That is the arrangement whereby Defendants were entitled to a certain minimum anticipated amount of cash flow, in turn for which they paid taxes and interest on the Property, while Debtor was entitled to increased rental amounts, which was precisely the way the parties conducted themselves for the first two or three years of their relationship prior to the first default.

As to the second claim for relief, the court agrees with the Defendants that it is barred by the statue of limitations for all the reasons set forth in the Motion. As to the third claim, the Superior Court denied Debtor the right to amend a comparable cause of action while the matter was pending there, and under the law of the case, that theory is foreclosed.[6] As to the fourth claim, the court's review of the Motion satisfies it that Defendants have provided adequate information to Debtor to account for revenues that they received at various times throughout this relationship, and that they have therefore satisfied their accounting

---

[6] The court recognizes that this adversary proceeding is a "separate case" but the parties are the same, the issues are the same, and indeed simply as a matter of convenience the court asked the Debtor to commence a new adversary proceeding rather than to try to amend yet again the various claims that had been asserted for years in the Superior Court action that was removed to this court.

obligations. The Defendants do not need to provide an accounting of how they applied the sums collected because the court's decision disposes of that matter. Similarly, to the extent that Debtor believes it is entitled to any set-off, the disposition of the second, third and fourth claims for relief render that issue moot.

V. CONCLUSION

Defendants are entitled to an order granting the Motion and a judgment in their favor in all respects in this adversary proceeding consistent with this Memorandum Decision. Because it would appear that all that remains is for Defendants to complete their foreclosure of the Property (whether judicially or nonjudicially), relief from stay would appear to be appropriate. If necessary, the court could remand the removed action but a final judgment in this adversary proceeding may suffice. That being said, the court is prepared to give Debtor one short period of time to attempt to effect a sale or refinancing of the Property on terms that would provide Defendants with their pay-off figure, as reflected in the record. In order to ascertain an appropriate length of time for Debtor to do so, and to determine an exact payoff amount, the court will conduct a status conference on March 15, 2011, at 9:30 a.m. In the meantime, Defendants should submit the forms of order and judgment disposing of this adversary proceeding and should comply with B.L.R. 9021-1.

**END OF MEMORANDUM DECISION**

-9-

Case: 10-03279    Doc# 51    Filed: 02/28/11    Entered: 03/01/11 10:41:58    Page 9 of 9